Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| VAN LOO FIDUCIARY SERVICES, an Oregon Limited Liability Corporation, as Personal Representative of the ESTATE OF MICHAEL REINOEHL,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA; PIERCE COUNTY, a political subdivision of the State of Washington; the MUNICIPALITY OF LAKEWOOD, a municipal corporation; STATE OF WASHINGTON; JAMES OLEOLE, an individual; CRAIG GOCHA, an individual; MICHAEL MERRILL, an individual; and JACOB WHITEHURST, an individual.<br><br>Defendants. | Cause No. 3:23-cv-05618<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEPARTMENT OF CORRECTIONS' MOTION TO DISMISS UNDER FED. R. OF CIV. P. 12(b)(6) |

The State of Washington moves to dismiss Plaintiff's state law claims against it by ignoring well settled law and encouraging this Court to make factual determinations that are the province of the jury. Its motion must be denied.

I.  **PLAINTIFF'S CLAIMS AGAINST THE STATE OF WASHINGTON ARE PLAUSIBLE**

The State of Washington moves to dismiss Counts Four and Six prior to discovery arguing that it cannot be held liable as Jacob Whitehurst's employer for Whitehurst's tortious

conduct on the job. The question before the Court is whether the complaint, with all reasonable inferences that can be drawn from it, plausibly alleges that Washington is liable under the doctrine of respondeat superior for the conduct of its employee, Whitehurst. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Washington claims that the answer to this question is 'no' because Washington completely relinquished control over Whitehurst to the United States Marshals Service (USMS) and therefore, under the borrowed servant doctrine, Washington is not liable for Whitehurst's conduct. Yet Plaintiff does not allege in her complaint that Washington relinquished all control over Whitehurst to the USMS, nor does it allege facts from which this would be a reasonable inference to draw. Plaintiff alleges in her complaint that Whitehurst was working for the State of Washington at the time of the tortious conduct, FAC ¶ 3.6, 5.8, 5.9, that the State of Washington retained the responsibility for Whitehurst generally under its Memorandum of Understanding ("MOU") with the USMS, *id.* at ¶ 5.56, and that Whitehurst was specifically subject to the Department of Corrections rules regarding use of force when he used unreasonable force against Michael Reinoehl, killing him. *Id*. Those facts sufficiently allege an employment relationship sufficient to trigger respondeat superior liability. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When it comes to respondeat superior, the fact of an employment relationship between the tortious actor and the employer, combined with the fact that the employee was doing his job at the time of the tortious conduct, is more than sufficient to make for a reasonable inference that the employer is liable for the conduct. Washington's arguments to the contrary are for the trial jury, not a Court on a Rule 12 motion, and must be denied.

### A. Respondeat Superior

The State of Washington is liable for the torts of its employees under respondeat superior to the same extent as any private employer. *See* RCW § 4.92.090; *Rahman v. State of Washington*, 246 P.3d 182 (2011). Like any other private employer, Washington is liable for the torts of its employees committed during the course and scope of their state employment. *Rahman*, 246 P.3d at 188. This includes instances where the employee violates policy or is serving their own purposes in addition to the purposes of their employer. *Id*. It also includes instances where the employee simultaneously serves two agencies: Washington and another entity. *See Ward v. Gordon*, 999 F.2d 1399, 1404 (9th Cir. 1993) (recognizing that Washington law allows that "an individual simultaneously can be the servant of both the 'lending' and the 'borrowing' master").

Washington's argument in this case reflects a shared attitude among the Defendants: that the individual Defendants must be acting on behalf of only one entity, either federal or local; that it is not possible for an individual to serve two entities at once. This argument has no basis in Washington law. As the Ninth Circuit explained in *Ward*, Washington follows the Restatement (Second) of Agency § 226 which allows for situations where an employee can serve both the lending and the borrowing employer at once, and therefore both may be responsible for a single tortious act by the employee. 999 F.2d at 1404; *see Becerra v. Expert Janitorial, LLC,* 181 Wn.2d 186, 194 (2014) (holding that the question of joint employment is "fact-intensive" and rarely appropriate for summary judgment).

### B. Borrowed Servant Defense is for the Jury

In any case where the borrowed servant defense is raised by an employer, the Washington courts have been emphatic that this is a question of fact for the jury. Washington relies primarily on *Wilcox v. Basehore*, 187 Wash. 2d 772, 389 P.3d 531 (2017), to support its argument. Washington fails to acknowledge that the Supreme Court of Washington stated *four*

*separate times* in *Wilcox* that the question of exclusive control under the borrowed servant doctrine is a question of fact for the jury. *Id.*, at 534 ("We hold that the borrowed servant doctrine is properly a question for the jury where complete control is a disputed fact."), 538 ("Whether the special employer had exclusive control for the relevant transaction is generally a question of fact for the jury."), 539 ("Whether the special employer has exclusive control is a question of fact for the jury."), 539 ("This is a factual question that was properly submitted to the jury."). Nor was *Wilcox* breaking new ground with its repeated direction. "Whether the evidence and reasonable inferences therefrom show a relationship of subordination or cooperation is for the trier of fact. It is only if the evidence is undisputed that the nature of the relationship existing presents a question of law." *Pichler v. Pac. Mech. Constructors*, 1 Wn. App. 447, 450, 462 P.2d 960 (1969); *see Anderson v. Red & White Constr. Co.*, 4 Wn. App. 534, 539, 483 P.2d 124 (1971) (same); *Erickson Paving Co. v. Yardley Drilling Co.,* 7 Wn. App. 681, 686, 502 P.2d 334 (1972) (same). Despite this clear, well established, binding precedent, Washington argues that this question should be resolved by the trial court based solely on the allegations in the complaint. It cites no case where the question of borrowed servant has ever been resolved at the pleading stage and counsel is aware of none.

As the Supreme Court of Washington explained in 1966, a jury faced with a typical borrowed servant problem could come to any of three possible conclusions. "[The employee] could have been either: (1) the servant of his general master … ; or (2) the servant of the 'borrowing' master … ; or (3) the servant of both companies." *Nyman v. Macrae Bros. Constr. Co.*, 69 Wn.2d 285 (1966). Resolving this question depends on analyzing competing facts which may sometimes point in different directions. It is not surprising then that the courts have consistently held that this is a question for the trier of fact.

### C. Westfall Act Certification

Washington also relies on the Westfall Act certification filed by the United States in this case to support its argument. That certification is completely irrelevant to the question in front of the Court, and it no longer has any relevance to this case. The Westfall Act precludes state lawsuits against federal employees where the Attorney General certifies the individual as an employee acting within the scope of their employment. 28 U.S.C. § 2679(b). Plaintiff brings no state law claims against the individual employees, instead electing to proceed only against the employers under state law. *See* FAC. The United States has not attempted to substitute itself for the local government employers that Plaintiff sued. *See* Dkt. No. 29. That is undoubtedly because the Westfall Act only authorizes the United States to substitute itself for individuals that it deems federal employees. 28 U.S.C. § 2679(b)(1) (limiting claims against employees and their estates). Therefore, the Westfall Act has no impact whatsoever on Plaintiff's state law claims or any other claims in this lawsuit. Counts Four and Six are state claims against state entities and must be resolved by looking only to state law.

## II. COUNT SIX IS TIMELY

The State of Washington next argues that the battery claim is untimely under RCW § 4.16.100(1). That statute provides a two-year statute of limitations for claims of battery. Washington's argument begins and ends there, with no cases interpreting the statute cited. That's because, here again, Washington's argument is contrary to a solid wall of binding precedent. As the Washington courts have recognized since 1901, when a battery claim seeks wrongful death damages, as is the case here, the statute of limitations is three years, not two. *See Smalls v. City of Tacoma*, No. 3:22-cv-5043, 2023 WL 3076643, at *4 (W.D. Wash. Apr. 25, 2023) (collecting cases).

## III. CONCLUSION

The claims at issue in the State of Washington's motion are purely state law claims. Despite this, Washington's arguments ignore the well-settled principles raised by those claims. The motion must be denied.

DATED this 4th day of December, 2023.

LEVI MERRITHEW HORST PC

By: *s/ Jesse A. Merrithew*
**Jesse Merrithew**, WSBA No. 50178
Email: jesse@lmhegal.com
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Of Attorneys for Plaintiff