UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VAN LOO FIDUCIARY SERVICES, an
Oregon Limited Liability Corporation, as
Personal Representative of the ESTATE OF
MICHAEL F. REINOEHL,

Plaintiff,

v.

THE UNITED STATES OF AMERICA;
PIERCE COUNTY, a political subdivision
of the State of Washington; the
MUNICIPALITY OF LAKEWOOD, a
municipal corporation; STATE OF
WASHINGTON; JAMES OLEOLE, an
individual; CRAIG GOCHA, an individual;
MICHAEL MERRILL, an individual; and
JACOB WHITEHURST, an individual,

Defendants.

No. 3:23-cv-05618-DGE

PLAINTIFF'S RESPONSE IN
OPPOSITION TO INDIVIDUAL
FEDERAL DEFENDANTS' MOTION
TO DISMISS (DKT. 44)

**ORAL ARGUMENT REQUESTED**

## INTRODUCTION

Individual Defendants Oleole, Gocha, and Whitehurst move to dismiss Count One,

Plaintiff's 42 U.S.C. § 1983 claim, on the grounds the local law enforcement officers on a

state-federal task force are federal officials. They claim that as federal officials on temporary

assignment to a United States Marshals Service (USMS) task force, they could not be acting

under color of state law. They label the many relevant facts pled in the First Amended

Complaint (FAC) "conclusory." In fact, Plaintiff has pled specific facts, assumed true on this

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

motion, that the team to arrest Michael Reinoehl was a collection of local law enforcement employees, directed by local law enforcement employees, acting under the authority of state arrest law, with only nominal and insignificant USMS participation.

Plaintiff's *Bivens* claim (Count Two) is an alternative to Plaintiff's Section 1983 claim. Dkt. 37 ¶¶6.2-6.6. As such, the Court need only address it if, after resolution of the parties' factual dispute over whether the Individual Defendants were operating under "color of state law," decides they were not. On this basis alone the Court should deny Defendants' motion to dismiss Count Two. If the Court ultimately reaches the merits of Defendants' *Bivens* motion, it should nonetheless be denied.

Plaintiff addresses this motion brought by the Individual Defendants purported to be represented by the USA. Officer Merrill, the fourth individual defendant named in Counts One and Two, is not represented by the USA likely because his Special Deputy Appointment had lapsed. Although not at issue in this motion, Defendant Merrill makes the same structural arguments as Individual Defendants with current deputation appointments, and essentially also argues that the Special Deputy Appointment designation is meaningless in regards to the nature of the task force operations. With this argument, Plaintiff agrees.

## I.    MOTION TO DISMISS 42 U.S.C. § 1983 CLAIM

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v.*

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 2
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

*Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). A court also must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

Whether a person acts under color of state law is ultimately a question of law, but it is "necessarily [a] fact-bound inquiry" with the jury often playing a role. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982); *see, e.g.*, *Meier v. City of St. Louis*, 934 F.3d 824, 829-30 (8th Cir. 2019). A person acts under color of state law when the conduct is "fairly attributable to the state," *Wickersham v. City of Columbia*, 481 F.3d 591, 597 (8th Cir. 2007) (cleaned up), that is, when she "exercised power 'possessed by virtue of state law and made possible only because [she] is clothed with state authority." *Yassin v. Weyker*, 39 F.4th 1086, 1090 (8th Cir. 2022) (quoting *West v. Atkins,* 487 U.S. 42, 49(1988)).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 3
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

## A. Facts pled show this was a local government operation carried out pursuant to state law.

Michael Reinoehl left Oregon following the shooting of a Proud Boy in downtown Portland, Oregon on August 29, 2020. The homicide occurred during one of many occasions where hundreds of far-right activists, armed with deadly weapons, descended on the City of Portland to confront those protesting police violence. Dkt.37 at 5.13. Reinoehl went into hiding from right-wing extremists who had attacked his Portland home and were threatening violent retribution. *Id.* at 5.14-5.19. A USMS Violent Offender Task Force (VOTF) was formed to arrest Reinoehl on a warrant that was expected to be issued by Multnomah County, Oregon under state law. Id. at 5.12. The initial VOTF briefing was held on September 3, 2020, about 3 p.m. (*Id.* at 5.17) at the Pierce County Sheriff's Office and conducted by Erick Clarkson, a Pierce County Sheriff's Office employee. *Id.* at 5.30-5.31. Most of the law enforcement officers who attended the briefing, including all Individual Defendants, were local law enforcement employees who had taken an oath to uphold the law and constitution of the State of Washington. *Id.* at 5.50. All members were required to comply with their agency's guidelines concerning the use of firearms, deadly force, and less-lethal devices. *Id.* at 5.56(b). The officers' law enforcement training, certification, legal privileges and access to information databases were enjoyed because of their status as law enforcement officers under color of state law. *Id.* at 5.63. Their state law certifications and benefits formed the basis of their participation in the task force. *Id.* at 5.64.

The three Individual Defendants had current USMS Special Deputation Appointments. These documents, among other statements, declared they were not federal

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 4
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

employees of the USMS nor the federal government under the Special Deputy Appointment and their authority was limited to:

* TO SEEK AND EXECUTE ARREST AND SEARCH WARRANTS SUPPORTING A FEDERAL TF UNDER TITLE 18 AUTHORITY

After the Multnomah arrest warrant arrived at 4:50 p.m., the VOTF traveled from Pierce County to the Lacey Police Department. *Id.* 5.71-5.72. After gathering briefly in Lacey, Washington, the law enforcement officers, including the three Individual Defendants, proceeded to the neighborhood where they believed Reinoehl was staying. Pierce County Sheriff Officer Oleole and Lakewood Police Officer Merrill were in the lead car, an Escape, with Merrill driving. Behind them were Pierce County Sheriff's Officer Gocha and U.S. Marshal Kimmel in a Traverse. *Id.* at 5.80-5.81. At 6:51:42 p.m., Oleole broadcast "He's getting in the Jetta, we should take him, he's in the Jetta." Though unidentified individuals questioned the action, less than a minute later, Oleole said "Let's go take him." Within seconds, Oleole and Merrill were moving to block the Jetta, (*Id.* at 5.95) while Oleole was again broadcasting "take him now, take him" (*Id.* at 5.94).

Oleole fired six rounds into the Jetta as his vehicle screeched to a halt with Gocha and Kimmel following. Merrill and Gocha also fired at Reinoehl. Whitehurst, a DOC employee, was alone in his vehicle that approached from a different direction, and he also fired at Reinoehl. 5.82-5.105, 5.108. Over forty shots were fired at Reinoehl by the four individual defendants. Five shots struck Reinoehl and three were potentially fatal. Two of the fatal shots were in the back. *Id.* at 5.118-5.123. None of the unmarked cars used a siren. *Id.* at 5.107. Neither the Escape nor the Traverse had emergency lights on. *Id.* at 5.98. Civilians in the area

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 5
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

had no idea they were witnessing a police operation until after the shooting stopped. *Id.* at 5.100. No civilian heard police issue a command or warning. *Id.* at 5.110.

A post-shooting investigation was conducted under Washington law by the Region 3 Critical Incident Investigation Team (Region 3 CIIT) comprised of local law enforcement agencies and chaired by Thurston County officials. *Id.* at 5.69. USMS did not participate; Kimmel has refused to give a statement. *Id.* at 5.115

## B. Individual Defendants were acting under State Authority – Not Federal Authority

Underpinning Defendants' argument they were operating under federal authority, is their erroneous assertion they had no authority to arrest outside their employing agencies territorial jurisdiction. This ignores the plain text of RCW 10.93.070:

> In addition to any other powers vested by law, a general authority Washington peace officer who possesses a certificate of basic law enforcement training or a certificate of equivalency or has been exempted from the requirement therefor by the Washington state criminal justice training commission may enforce the traffic or criminal laws of this state throughout the territorial bounds of this state, under the following enumerated circumstances:
> ...
> (5) When the officer is executing an arrest warrant or search warrant.

In *State v. Brunson,* 10 Wn. App. 2d 1032 (2019) (Wash. Gen. R. 14.1 citations to unpublished opinions), the Court of Appeals found the statute "unambiguously authorizes any qualified Washington peace officer to execute an arrest warrant statewide." *See State v. Chambers,* 518 P.3d 649 at 656 (Court of Appeals Wash. 2022) (presence and involvement of out of state officers at execution of search warrant permissible if acting under direction of sheriff); RCW 10.93.070(7). This includes serving an out of state warrant. *See Case v. Kitsap County Sheriff's Dept.*, 249 F.3d 921, 926–27 (9th Cir. 2001) (County Sheriff has authority to

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

execute out of state felony warrant without a separate Washington warrant; Once arrested, the matter then proceeds under RCW 10.88.320 extradition procedures).

Rather than citing the clear state authority for the individual officers to serve the arrest warrant anywhere in the state, the Individual Defendants instead mischaracterize the holding of *King v. United States,* 917 F.3d 409 (2019), *rev'd sub non on other grounds* by *Brownback v. King,* 141 S.Ct. 740, 209 L.Ed.2d 33 (2021). They miscite *King* for the proposition that a federal task force member cannot operate under color of state law, when *King* specifically stated, "[a] defendant's actions performed pursuant to a mixed federal and state program may be actors under color of state law." 917 F.3d at 432–33 (internal quotations omitted). Defendants also claim *King* supports that the mere existence of task force enabling legislation, 34 U.S.C. § 41503(a) and 28 U.S.C. § 566(e)(1)(B), renders all acts "under federal authority" regardless of the kind of task force or action involved. *King* actually requires evaluating whether the particular conduct at issue was taken under state or federal law, an inquiry focused on the actual nature and character of the action. In *King*, a city detective was working full time with an FBI task force, the FBI managed the specific arrest operation, and the state was not involved in administering the task force. Based on those facts, and on a motion for summary judgment, the Court found that detective to be operating under federal authority. *Id. at* 433. None of those facts are present here.

As problematic for Individual Defendants as the state authority they <u>did</u> have, is the fact that their federal authority to make the arrest is questionable. The federal statutes relied upon by the Individual Defendants do not give officers any authority they didn't already have under State law. 34 U.S.C. § 41503(a) simply authorizes the formation of permanent Fugitive Apprehension Task Forces. The US Pres. Threat Act, (PUBLIC LAW 106–544—DEC. 19,

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 7
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

2000), is an act *"to provide clearer coverage over threats against former president and members of their families and for other purposes."* Section 6(a) simply authorizes the establishment of *"permanent Fugitive Apprehension Task Forces, consisting of Federal, State and local law enforcement authorities...."* Section 41503(c) explicitly states: *"nothing in this section shall be construed to limit any existing authority under any other provision of Federal or State law for law enforcement agencies to locate or apprehend fugitives through task forces or any other means."*

The enabling legislation for the VOTF did not expand USMS's authority to include serving state warrants, nor diminish any authority of local law enforcement.

Under the clear language, VOTF is authorized to be "directed and coordinated" by USMS, but ***did not*** receive any authority beyond USMS's underlying authority which remains subject to its original scope authority at 28 U.S.C. § 566:

> *(a)*     It is the primary role and mission of the United States Marshals Service to provide for the security and to obey, execute, and enforce all orders of the United States District Courts, the United States Courts of Appeals, the Court of International Trade, and the United States Tax Court, as provided by law.

> *(b)*     Except as otherwise provided by law or Rule of Procedure, the United States Marshals Service shall execute all lawful writs, process, and orders issued **under the authority of the United States**, and shall command all necessary assistance to execute its duties.

> (d) Each United States marshal, deputy marshal, and any other official of the **Service** as may be designated by the Director may carry firearms and make arrests **without warrant** for any offense against the United States committed in his or her presence, **or for any felony cognizable under the laws of the United States** if he or she has reasonable grounds to believe that the person to be arrested has committed or is committing such felony.

(emphasis added). Serving state warrants does not fall within the core mission; given that it is a secondary function, absent a clear expression of Congressional authority.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 8
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

Individual Defendants cite the Attorney General's opinion on "Authority of FBI Agents Serving as Special Deputy United States Marshals, to Pursue Non-Federal Fugitives." 19 U.S. Op. Off. Legal Counsel 33 (OLC), 1995 OLC LEXIS 21. Dkt. No. 44 at 14. That opinion not only doesn't support the argument that this operation was "under federal authority;" it raises questions whether the task force officers had any federal legal authority. The opinion describes the legality of the use of federal officers to arrest persons charged solely with state law violations as "unsettled and controversial." *Id.* at 44. The opinion concluded the USMS authority to investigate or pursue state law fugitives was permitted only under 28 U.S.C. § 564, not 28 U.S.C. § 566. 28 U.S.C. § 564 regarding service of state warrants, provides that the USMS has only the powers that a sheriff of the state may exercise. Stated differently, these individual officers had only the legal authority of a local sheriff – which in fact two of them were.

Further, the Special Deputization documents specifically limit the authority under the deputation "to seek and execute arrest and search warrants supporting a federal task force under Title 18 authority." Dkt. No. 29-2. United States Code Title 18 is the federal criminal code. It contains no authority to arrest a person for violation of a state law. Reinoehl was not charged with any federal crimes. He was never charged as a fugitive. The Individual Defendants specifically relied on the issuance of a State of Oregon arrest warrant for violation of Oregon state law to serve the warrant which they each had authority to serve under RCW 10.93.070(5). Any authority defendants had pursuant to the special deputation designation was to conduct arrest and searches under Title 18, not for violations of state law resulting in a state warrant.

A more relevant case regarding USMS special deputy authority is *United States v. Weiland,* 420 F.3d 1062 (9th Cir. 2005), in which a Spokane Sheriff's Office detective had a

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 9
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

Special Deputation appointment by the USMS with ATF as the sponsoring agency. The detective was "specifically authorized [] to seek and execute arrest and search warrants supporting a federal task force." *Id.* at 1067. The detective applied for and received a federal search warrant leading to several convictions of federal crimes under Title 18. The detective was a "federal law enforcement officer" for the limited purpose of enforcing the federal criminal law under Fed. R. Crim. P. 41(a)(2)(c) and 28 U.S.C. § 566, § 564 providing explicit authority to seek and execute federal search warrants. *Id.* at 1070. Finally, Individual Defendants rely on *Johnson v. Creatura,* No. 11-cv-5057-FVS, 2011 WL 1327136 (W.D. Wash. 2011) for the unsurprising decision that a federal magistrate being sued for granting an IRS petition to lien property was acting under federal authority. [1]

In sum, the Reinoehl operation was conducted under the authority of state law permitting the Individual Defendants to arrest Reinoehl anywhere in the State of Washington. The Individual Defendants specifically retained all state authority under the task force enabling legislation. It was that state authority, and only that state authority, which allowed them to execute the Oregon warrant on Reinoehl. Nothing Individual Defendants cite supports the proposition this operation was under exclusive federal authority – in fact it is questionable whether the enabling law or special deputations in this case support <u>any</u> federal authority for the Individual Defendants actions.

## C.  Individual Defendants Officers Acted Under Color of State Law

In making their argument that the Individual Defendants cannot be held liable under Section 1983, the government ignores the statute and binding Supreme Court and Ninth Circuit

---

[1] The authority in *Weiland* stands in stark contrast to the lack of authority granted to the three officers.

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

case law. Rather than contend with the well-established meaning of the statute, the government

attempts to create a mirage of precedent for a categorical rule that does not exist. The

defendants wrongly contend cases involving joint task forces categorically hold that they do

not act under color of state law, erroneously claim individual defendants can only be a federal

actor or state actor, not both, and rely primarily on cases where the federal dominance and

control is overwhelming. In so doing, they ignore fundamental Section 1983 jurisprudence and

subvert the statute's intent.

      1.       The Language and Purpose is Broad.

      Section 1983 provides liability against "[e]very person" who violates the Constitution

"under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. §

1983. The statute is not limited to violations committed "under the *exclusive* color" of state law

or even "under the primary color" of state law. That's because Section 1983 is a remedial statute

passed "in the aid of preservation of human liberty and human rights." *Lake Country Estates,*

*Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 399-400 n.17 (1979) (internal quotation

omitted). It is, therefore, "well settled that § 1983 must be given a liberal construction." *Id.* at.

1176.

> To read the "under color of any statute" language of the Act in such a way as to
> impose a limit on those Fourteenth Amendment violations that may be
> redressed by the § 1983 cause of action would be wholly inconsistent with the
> purpose of § 1 of the Civil Rights Act of 1871, 17 Stat. 13, from which § 1983
> is derived. The Act was passed "for the express purpose of '[enforcing] the
> Provisions of the Fourteenth Amendment.'" *Lynch* v. *Household Finance Corp.,*
> 405 U.S. 538, 545 (1972). The history of the Act is replete with statements
> indicating that Congress thought it was creating a remedy as broad as the
> protection that the Fourteenth Amendment affords the individual. Perhaps the
> most direct statement of this was that of Senator Edmunds, the manager of the
> bill in the Senate: "[Section 1 is] so very simple and really [reenacts] the
> Constitution." Cong. Globe, 42d Cong., 1st Sess., 569 (1871). Representative
> Bingham similarly stated that the bill's purpose was "the enforcement ... of the

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

Constitution on behalf of every individual citizen of the Republic ... to the extent of the rights guaranteed to him by the Constitution." *Id.,* App. 81.

*Lugar* v. *Edmondson Oil Co.,* 457 U.S. 922, 934 (1982).

The broad reach of 42 U.S.C. § 1983 is illustrated by the wide variety of situations in which individuals can act under color of state law. The cases cited by defendant illustrate this proposition. *West v. Atkins,* 487 U.S. 42, 49 (1988), held a private physician in a state prison was acting under the color of state law. *Morse v. N. Coast*, 118 F.3d. 1338 (9th Cir. 1997), involving a HeadStart administrator alleged to have made a discriminatory employment decision was based on the fact HeadStart is a federal program. In *Collins v. Womancare*, 878 F.2d 1145 (1989), the court emphasized that "only by sifting facts and weighing circumstances can the nonobvious involvement of the state in private conduct be attributed to its significance." *Id.; (citing Evans v. Newton,* 382 U.S. 296, 299-300 (1966)); s*ee also*, *Harvey v. Plains Tp. Police Dept.,* 635 F.3d 606 (3rd Cir. 2011).

2.    Cases do not Categorically Hold Joint Task Force Members are Federal not State Actors.

The Ninth Circuit, among others, follows the long-established test for whether a person acts under color of state law for purposes of Section 1983 under the totality of the circumstances. *See Pistor v. Garcia*, 791 F.3d 1104, 1115 (9th Cir. 2015) (tribal police may be sued under § 1983 when enforcing state law). Under the totality test, courts have long recognized that state officers, federal officers, tribal officers, and even private persons may act under color of state law. *Id*. Bona fide federal employees may be liable under Section 1983 if they conspired or acted in concert with state officials. *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992) (federal office in a symbiotic relationship with a state actor may be acting under color of state law).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 12
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

In *Evans v. McKay*, 869 F.2d 1341, 1347 (9th Cir. 1989), the Ninth Circuit held that Bureau of Indian Affairs officers, acting on the Blackfeet Indian Reservation, enforcing a Tribal Court order, nonetheless may be acting under color of state law under 42 U.S.C. § 1983 because the alleged unconstitutional arrests were made pursuant to a city ordinance prohibiting obstruction of justice. They were arguably acting in their joint capacity as City of Browning police officers. *Evans* was followed by *Bressi v. Ford,* 575 F.3d 891, 895 (9th Cir. 2009) (roadblock of state highway on tribal land, gave rise to non-Indian 1983 claim under color of state law) and *Pistor v. Garcia,* 791 F.3d 1104, 1114 (9th Cir. 2015) (individual tribal defendant could be sued if they acted under color of state, not tribal law.)

There is a split in the circuits regarding whether federal task force members can act under color of state law. Defendants rely on cases in circuits that apply a categorical rule that task force members act under color of federal and not state law. *DeMayo v. Nugent*, 517 F.3d 11, 14 n.5 (1st Cir. 2008); *Guerrero v. Scarazzini*, 274 Fed. Appx. 11, 12 n.1 (2d Cir. 2008). Defendants fail to acknowledge that the Ninth Circuit, among others, has not adopted that view. *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992); *Carden v. Duffy*, 446 F.3d 483, 499 (3rd Cir. 2006); *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976).

Defendants cite *Nelson v. Weber*, No. 3:16-cv-5680, 2017 WL 3034641, at *4 (W.D. Wash. May 19, 2017), to argue that courts routinely recognize deputized members of a task force as federal, not state, actors. Dkt. No. 44 at 15. However, when the Ninth Circuit reviewed the District Court's decision in *Nelson,* No. 20-cv-35562, 2022 WL 3102403 (9th Cir. 2022), it explicitly declined to adopt that view: "…we note that the parties dispute whether Weber was acting as a state or federal actor and therefore whether he had a cause of action under section 42 U.S.C. § 1983. We conclude we need not resolve this dispute...." *Id.* at *1.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 13
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

In the context of mixed state-federal task forces, the Ninth Circuit has addressed whether state or local employees working with federal employees may be sued under Section 1983 only in a single unpublished decision, *Anh Tuyet Thai v. Saul,* 804 Fed. App'x. 485 (9th Cir. 2020). There, the court held it was error to dismiss Section 1983 claims against state district attorneys working with federal agents to enforce federal law. *Id.* at 448.

3.      Defendants Rely on Cases that are Distinguishable.

Defendants assert that an actor is either a state or federal and cannot be both. Dkt. No. 44 at 16. In addition to being inaccurate under Ninth Circuit law as noted above, the proposition can be traced to *Amoakohene v. Bobko,* 792 F. Supp. 605 (N.D. Ill. 1992) which involved a very different kind of task forces—a joint DEA drug investigation to "stymie drug trafficking." *Id.* at 608. Several cases cited by defendants involved ongoing investigations, directed by true federal agencies such as the DEA, ATF, and FBI, pursuing investigations of federal crimes under the direction of U.S. attorneys. *West v. City of Mesa,* 2015 WL 1959467 (DC Ariz. 2015) (joint operations between FBI and Mesa P.D. under lead of FBI.)  *Yassin,* 39 F.4th 1086 (ongoing federal FBI task force, led by federal attorneys for federal sex trafficking violations); *Faraq v. U.S.,* 587 F. Supp. 2d 436 (E.D. N.Y. 2008) (FBI counterterrorism task force arrested Plaintiff based on Arab ethnicity; city officer acting under FBI direction).

District Courts finding that task force members acted under federal but not state law relied on law outside the Ninth Circuit.  *James v. City of Rochester,* No. 23-cv-6057-DGL, 2023 WL 3356931, at *7 (W.D. N.Y. 2023), relied on Second Circuit law, which is inconsistent with Ninth Circuit law on this point, to find that task force members acted under federal law. Demonstrating how precarious Defendants arguments are, the same court reached the opposite conclusion in *Smith v. Arrowood,* 6:21-cv-6318 EAW, 2022 WL 3927884 (W.D. N.Y. 2022),

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 14
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

regarding the actions of one of the same officers involved in *James*. *Deavers v. Martin,* 629 F. Supp. 3d 389 (S.D. W.V. 2022) follows Sixth Circuit law. *Stout v. Oklahoma Ex. Rel., Oklahoma Highway Patrol,* Nos. 13-cv-753-WPJ, 14-cv-427-WPJ, 2015 WL 127820 (W.D. Okla. 2015) relied on Tenth Circuit law and specifically rejected cases from other circuits.

Other cases address different issues in different contexts such as whether a task force participant can be charged in state court. *Colorado v. Nord,* 377 F. Supp. 2d 945 (D.C. Colo. 2005) (ongoing drug enforcement task force member could not be charged in state court with criminal contempt; not address the "under color of state law" issue); *Georgia v. Heinze,* 637 F. Supp. 3d 1316 (2022) (grand jury indicated specially deputized state officer on criminal charges stemming from fugitives shooting death. Issue whether federal officer for immunity purposes in the context of removal). *But see Ohio v. Meade* 2022 WL 486294 (S.D. Ohio) where the court remanded a USMS special deputy task force member to face murder charges in state court. A couple of cases dismiss Section 1983 claims as not adequately pled under *Monell. See, e.g., Martinez v. City of W. Sacramento,* 2021 U.S. Dist. LEXIS 63105 (E.D. Cal. Mar. 31, 2021); *Gaspard v. DEA Task Force,* No. 5:16-cv-2290, 2018 WL 5816234 (C.D. Cal. Apr. 4, 2016). Finally, defendants cite *Glennie v. Garland,* No. 21-cv-231-JJM, 2023 WL 2265247 (D.C. R.I. 2023), a case involving inadequate care to a federal prisoner that does not allege a claim under Section 1983.

One case relied on by Defendants forms a good prism for evaluating whether an operation is essentially a federal or state operation. In *Askew v. Bloemker,* 548 F.2d 673, the court rejected the argument that a local officer could be liable under color of state law by noting the ongoing federal drug enforcement task force was "an indelibly federal hue" upon the activities of these agents even though they maintained official links with SLPD). *Id.* at 677.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 15
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

The opposite is true here where the operation of this VOTF has an indelibly state hue with a "thin veneer" linking to federal actors.

      4.      Defendants Rely on Cases Where the Federal Authorities Direct the Action and Enforcement of Federal Law and True Federal Actors Dominate; the Opposite is True Here.

Defendants also rely on cases that are clearly under a "federal hue." *Billings v. U.S.,* 57 F.3d 797 (9th Cir. 1995) involved a FEMA advisory board member traveling to a FEMA event at FEMA expense. The board member was clearly acting under federal law, as were Secret Service Agents who directed the local sheriff to arrest Billings. In *Billings*, the court acknowledged the individual sheriff could act under color of state law if they conspired or acted in concert with state officials, instead of at the behest of, and under the direction of, federal agents. *Ibrahim v. Dept. of Homeland Sec.,* 538 F.3d 1250, 1256 (9th Cir. 2008) is easily distinguishable as it was a clear federal operation: local police acted at the explicit direction of FBI officers to arrest a student on the federal no fly list. No state has anything to do with creating or enforcing the federal no fly list. The court again affirmed the principle that federal officials could only be liable under Section 1983 where there is a sufficiently close nexus between the state that the challenged action may be fairly treated as that of the state itself.

Here the allegation is the opposite. The operation was staffed and directed by local law enforcement officers. With the exception of a single USMS employee not believed to have directed any aspect of the operation, The Task Force was comprised exclusively of local law enforcement officers, who worked for state and local agencies executing a warrant issued by a state court to arrest an individual for violation of a state law. The local law enforcement officers had authority under RCW § 10.88 (Uniform Criminal Extradition Act) and RCW 10.93.070,

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

to execute an arrest warrant anywhere in the state without regard to federal participation. *Case,* 249 F.3d at 926. They were not enforcing or executing federal law. It was not a federal warrant, and it was not federal law that authorized the execution of Oregon's warrant in Washington. The only role federal law played was in creating the task force. Plaintiff has plausibly alleged that the violation of Reinoehl's constitutional right occurred under color of state law.

## II.  DISMISSAL OF THE *BIVENS* CLAIM IS IMPROPER BECAUSE IT WOULD NOT EXTEND *BIVENS*, AND SPECIAL FACTORS WOULD SUPPORT EXTENDING *BIVENS* TO THESE FACTS.

### A.  The Complaint Alleges the Type of Fourth Amendment Seizure Claim Approved by the U.S. Supreme Court.

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, the U.S. Supreme Court created an implied damages remedy for certain suits against federal officials who violated the Constitution. *See* 403 U.S. 388, 397, 91 S. Ct. 1999, 2005 (1971). Specifically, the Court implied a cause of action under the Fourth Amendment for the plaintiff's suit for damages against federal agents who conducted a warrantless search and arrest and used "unreasonable force…in making the arrest." *Id.* at 2001.

Since *Bivens*, the U.S. Supreme Court expanded the scope of implied causes of actions for constitutional violations into two new contexts. *See Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979) (Fifth Amendment claim against Congressperson for sex discrimination); *see Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980) (Eighth Amendment claim against federal prison officials for deliberate indifference to a serious medical need). These three contexts constitute the extent of implied causes of action against federal officers, and courts must proceed with "caution" when extending an implied cause of action to any new context. *See Egbert v. Boule*, 596 U.S. 482, 142 S. Ct. 1793, 1802-

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305

03 (2022). However, within its recent jurisprudence establishing the limits of implied causes of action under *Bivens*, the U.S. Supreme Court has also stated that its intent was "not…to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." *Ziglar v. Abbasi*, 582 U.S. 120, 134, 137 S. Ct. 1843, 1856 (2017).

When asked to "extend" *Bivens*, a court engages in a two-step inquiry. *Egbert*, 142 S. Ct. at 1803 (citing *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)). First, a court must "ask whether the case presents 'a new *Bivens* context.'" *Id.* Second, "if a claim arises in a new context," a court must analyze "special factors" concerning the judiciary and Congress's role "in allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1803.

**B. This Case Would not Extend *Bivens* Because it is not "Meaningfully Different": Plaintiff Alleges Low-Level Officers Engaged in Traditional Domestic Law Enforcement Directly Participated in the Violation.**

Under the first step of this inquiry, a court regards a "context as 'new' if it is 'different in a meaningful way" from the U.S. Supreme Court's previous *Bivens* cases. *Hernandez*, 140 S. Ct. at 743 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 139, 137 S. Ct. 1843, 1859-60 (2017)). The Court's use of the term "meaningful," is important. *See Ziglar*, 137 S. Ct. at 1860 (listing examples of "meaningful" differences that create a new context, including "the rank of the officers involved," "the constitutional right at issue," and "the statutory or legal mandate under which the officer was operating."). When analyzing whether the differences are "meaningful," the Court itself has stated that "[s]ome differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context." *Ziglar*, 137 S. Ct. at 1865.

For example, several Circuit Courts have determined that violations of the Fourth Amendment committed during routine or garden variety law-enforcement action do not

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 18
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

constitute an extension of *Bivens*. *See, e.g., Greenpoint Tactical Income Fund LLC v. Pettigrew*, 38 F.4th 555, 564 (7th Cir. 2022) (finding that because a case against an FBI Agent and Assistant United States Attorney for issuance of a false search warrant and seizure of assets constituted "[a] domestic search authorized pursuant to a fabricated warrant affidavit…[i]t does not raise questions of foreign policy or national security. Plaintiffs allege here the sort of Fourth Amendment violation familiar to federal courts and close to the heart of *Bivens*."); *Hicks v. Ferreyra*, 965 F.3d 302, 311 (4th Cir. 2020) (finding that a case arising from two traffic stops executed by the United States Park Police officers, "appears to represent not an extension of *Bivens* so much as a replay: Just as in *Bivens*, Hicks seeks to hold accountable line-level agents of a federal criminal law enforcement agency, for violations of the Fourth Amendment, committed in the course of a routine law-enforcement action."); *Jacobs v. Alam*, 915 F.3d 1028, 1038 (6th Cir. 2019) (holding, in a case stemming from the "U.S. Marshals Service's efforts to apprehend a federal fugitive through its Detroit Fugitive Apprehension Team task force," that "*Ziglar* and *Hernandez* are not the silver bullets defendants claim them to be —plaintiff's claims are run-of-the-mill challenges to "standard law enforcement operations" that fall well within *Bivens* itself.").

A recent opinion from the United States District Court for the District of Maryland offers careful analysis of these issues in case involving Fourth Amendment claims against the U.S. Marshal Service for excessive force during service of an arrest warrant. *Orellana v. United States*, No. TDC-20-0845, 2023 U.S. Dist. LEXIS 171009, at *17 (D. Md. Sep. 25, 2023). In holding the claim did not extend *Bivens* to a new context, the court found that "the existence of the warrant is largely incidental to the claim, which seeks to hold accountable line-level agents of a federal criminal law enforcement agency, for violations of the Fourth Amendment

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

involving excessive force which, as in *Bivens*, was committed in the course of a routine law-enforcement action." *Id*. (internal quotations omitted). Also, "the mission of the U.S. Marshals Service in executing arrest warrants does not implicate such specialized interests in a way that sets Orellana's claim apart from those involving standard federal law enforcement activities by other federal agencies such as the drug investigation at issue in *Bivens*." *Id*. at 20-21. The court stated, "the present case is similar to *Bivens* itself in that it involves officers of similar rank, the same constitutional right, the same specificity of action in that it relates to a discrete encounter with a citizen, and no articulable risk of disruptive intrusion on the functioning of other branches of government." *Id*. at 22-23 (citing *Ziglar*, 582 U.S. at 140); *see also Ting v. United States*, 927 F.2d 1504, 1507 (9th Cir. 1991).

In *Pettibone v. Russell*, 59 F.4th 449, the Ninth Circuit applied *Egbert*, and focused on the practical realities of the officer's role, responsibilities, and degree of personal involvement in comparison that to the *Bivens* defendants:

> Russell, a high-level supervisor, was of a different rank than the agents in *Bivens*. Russell's alleged actions, which consisted of ordering or acquiescing in unconstitutional conduct, took place at a higher level of generality than the actions of the agents in *Bivens*, who personally seized *Bivens* and searched his apartment. The legal mandate under which Russell acted differed from that of the agents in *Bivens* in that Russell, an officer of the Federal Protective Service, was directing a multi-agency operation to protect federal property and was carrying out an executive order.

*Id*. at 455. Thus, the Ninth Circuit's analysis turns on the substance of the officer's involvement and its similarity or dissimilarity to the *Bivens* defendants.

Like *Pettibone*, the cases cited by the U.S. Supreme Court in *Hernandez* involve meaningful departures from Fourth Amendment claims against low-level officers directly involved in conventional domestic law enforcement actions. *Minneci* v. *Pollard*, 565 U. S. 118,

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 20
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

132 S. Ct. 617, 181 L. Ed. 2d 606 (2012) (Eighth amendment claim against employees of privately owned prison); *Wilkie* v. *Robbins*, 551 U. S. 537, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007) (due process claim for harassment and intimidation by Bureau of Land Management officials related to an easement on private property); *Corr. Serv. Corp.* v. *Malesko*, 534 U. S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001) (claim against a private company operating a halfway house under contract with Bureau of Prisons); *FDIC v. Meyer*, 510 U. S. 471, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994) (Fifth Amendment claim for property deprivation without due process); *Schweiker* v. *Chilicky*, 487 U. S. 412, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988) (improper denial of social security benefits); *United States* v. *Stanley*, 483 U. S. 669, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987) (addressing unique disciplinary structure of the Military Establishment); *Chappell* v. *Wallace*, 462 U. S. 296, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983) (military superior alleged to have assaulted inferiors in the course of military service); *Bush* v. *Lucas*, 462 U. S. 367, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983) (First Amendment claim by federal employees against supervisors).

Here, Plaintiff's claim arises under a conventional *Bivens* context. Like the *Bivens* defendants, who were personally involved in using "unreasonable force . . . in making the arrest", the individual defendants before this Court are line officers (not commanders or remote planners) who personally participated in contacting Reinoehl, which resulted in injuries and alleged excessive force. Their roles, responsibilities, and personal involvement are different than that of the "high-level supervisor" in *Pettibone*, whose personal involvement in causing excessive force was limited to planning and administration. *See* 59 F.4th 449.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 21
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

## C. "Special factors" Justify Judicial Branch Involvement in Remedy for Injury Caused by Judiciary's Law Enforcement Agency when Serving Judicial Warrant.

Under the second step, which courts only proceed to if a claim "arises in a new context" under step one, a court asks whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1803; *see also Hernandez*, 140 S. Ct. at 743 ("When we find that a claim arises in a new context, we proceed to the second step…."); *Hicks v. Ferreyra*, 956 F.3d 302, 309 (4th Cir. 2020) (quoting *Tun-Cos v. Perrotte*, 922 F.3d 514, 522 (4th Cir. 2019); ("If the 'context is *not* new,' on the other hand, 'then [the] *Bivens* remedy continues to be available.'"); *see e.g.*, *Orellana v. United States*, No. TDC-20-0845, 2023 U.S. Dist. LEXIS 171009, at *23-24 (D. Md. Sep. 25, 2023) (citing *Egbert*, 142 S. Ct. at 1803) ("Because [plaintiff's] *Bivens* claim does not present a new *Bivens* context, it is unnecessary to proceed to the 'special factors' second step of the inquiry.").  The Supreme Court "has not defined the phrase 'special factors counseling hesitation.' The necessary inference, though, is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Zigler*, 582 U.S. at 136.

Congress has already addressed the heart of this matter. Each of the Individual Defendants are, in point of fact, employed by state and local law enforcement agencies. Congress authorized their liability for constitutional violations in the Klu Klux Klan Act of 1871. As such, precluding liability under *Bivens* would only serve to create a judicial exception to the statute and permit state law enforcement officers to escape liability that was otherwise Congressionally mandated by participating in thinly veiled U.S. Marshals task force

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 22
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

operations.

The U.S. Marshals Service is essentially the judicial branch's own law enforcement agency: It is the **primary role and mission** of the United States Marshals Service to provide for the security and to **obey, execute, and enforce** all orders of the United States District Courts, the United States Courts of Appeals, the Court of International Trade, and the United States Tax Court, as provided by law. 28 U.S. Code § 566(a) (emphasis added). Here, to summarize, Plaintiff essentially alleges that Defendants rushed, attacked, and killed Mr. Reinoehl without cause during an attempt to serve a judicially issued arrest warrant. Dkt. No. 37 ¶¶I, 5.10. The judiciary in general has an interest in ensuring that its arrest warrants are not treated like death warrants, and the United States District Court in particular has a uniquely strong claim to establishing an adequate remedy for such a violation by officers hailing from the agency whose "primary role and mission" is to "obey, execute, and enforce" its orders. Accountability through the judicial system is paramount.

## III.    QUALIFIED IMMUNITY DOES NOT APPLY

Qualified Immunity does not shield law enforcement who violated clearly established constitutional rights. *Mitchell v. Forsyth,* 472 U.S. 511 (1985).

Plaintiff alleges that the Individual Defendants shot and killed Michael Reinoehl without giving him an opportunity to surrender and without identifying themselves as a law enforcement, which violates his clearly established right to be free from excessive force provided for by the Fourth Amendment. *See Tennessee v. Garner*, 471 U.S. 1, 9–12 (1985) (Police are not permitted to use deadly force to prevent the escape of a felony suspect "[w]here the suspect poses no immediate threat to the officer and no threat to others."); *Nehad v. Browder*, 929 F.3d 1125, 1138 (9th Cir. 2019) (discussing relevance of failure to identify as a

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 23
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

police officer to excessive force claim). *"Indeed, at the time of the shooting, caselaw would have made it 'clear to a reasonable officer' that 'a police officer may not use deadly force against a non-threatening individual, even if the individual is armed, and even if the situation is volatile.'" Smalls v. City of Tacoma,* No. 3:22-cv-5043, 2023 WL 3076643, at *8 (W.D. Wash. Apr. 25, 2023) (quoting *Est. Of Aguirre v. Cnty. Of Riverside,* 29 F.4th 624, 629 (9th Cir. 2022) (citing *Hayes v. Cnty. Of San Diego,* 736 F.3d 1223, 1227-28 (9th Cir. 2013); *George v. Morris,* 736 F.3d 829, 832-33, 839 (9th Cir. 2013)) (emphasis added); *see also Curnow By & Through Curnow v. Ridgecrest Police,* 952 F.2d 321, 325 (9th Cir. 1991) (under witness's "version of the shooting the police officers could not reasonably have believed the use of deadly force was lawful because Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time.").

Instead of refuting Plaintiff's claim as pled, Individual Defendants focus on refuting arguments Plaintiff is not making, like that politicization and poor planning constitute a constitutional violation. Dkt. No. 44 at 32-33. Plaintiff's Fourth Amendment claim is based on the unreasonable seizure that occurred when the Defendants shot and killed Reinoehl when he had made no threatening gesture and was instead attempting to flee what easily appeared to be an angry group of far-right extremists shooting at him. Dkt. No. 37 at 29–30.

The Individual Defendants also maintain that Plaintiff failed to plead "specific acts" while omitting the relevant specific facts pled. As pled, Reinoehl emerged from his residence, walked to his Jetta, and took no aggressive actions. Oleole and Merrill's vehicles suddenly accelerated to block the Jetta. Dkt. No. 35 at 5.95. Oleole fired six bullets into the Jetta, three of which pierced the windscreen and headrest. *Id.* at 5.97. Oleole, Merrill, and Gocha exited their vehicles and started firing as Reinoehl was ducking and running away *Id.* at 5.101,

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

Whitehurst joined shooting *Id.* at 5.108. No vehicles were marked and none had activated lights or sirens. *Id.* at 5.107. Commands, if given, could not be heard over gunfire. *Id.* at 5.109.

Next, the Individual Defendants disingenuously excerpt Plaintiff's pleading regarding the officer's self-serving statements. Dkt. No. 44 at 9–10. Defendants assert that the officers' statements—made after ten days and the opportunity to confer with one another—that "the plaintiff reached for something" is a concession to the truth of their statements. This pleading is not a concession of the truth of those statements. The Ninth Circuit has repeatedly instructed district courts in police shooting cases that:

> [I]n the deadly force context, we cannot simply accept what may be a self-serving account by the police officer. Because the person most likely to rebut the officers' version of events—the one killed—can't testify, the judge must carefully examine all the evidence in the record … to determine whether the officer's story is internally consistent and consistent with other known facts. This includes circumstantial evidence that, if believed, would tend to discredit the officer's story.

*Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) (internal quotations and citations omitted).

Here, there are ample reasons pleaded to doubt the self-serving accounts of the Defendants. For example, Merrill claims that he started shooting because Reinoehl raised a gun. Dkt. No. 37 at 5.114. But the gun was found unracked in Reinoehl's pocket. For Merrill's account to be true, Reinoehl would have pointed a gun at the police, been shot at, and, rather than return fire or even rack the gun, put the gun in his pocket and ran away. Including the Defendants' accounts is not a concession of their truthfulness. They are included to demonstrate their self-serving nature, which is obvious from the context of how they are presented in the complaint.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 25
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street • Suite 3400 • Seattle, WA 98101
Phone (206) 622-8000 • Fax (206) 682-2305

# IV. CONCLUSION

Plaintiff alleges a routine state law enforcement action with an all-too-routine injury resulting from that action. Taken as true, this allegation unquestionably alleges a violation of Reinoehl's right to be free from unreasonable seizures under the Fourth Amendment. Given that he was shot and killed by local law enforcement officers ostensibly attempting to arrest him on a local warrant, liability under Section 1983 is obvious. The federal government does not have the power through the executive branch to immunize local police officers from liability.

DATED this 4th day of December, 2023.

I certify that this document
contains 7,900 words,
in compliance with the
Local Civil Rules.

SCHROETER GOLDMARK & BENDER

*s/ Rebecca J. Roe*
REBECCA J. ROE, WSBA #7560
JEFFERY P. ROBINSON, WSBA #11950
LILY E. RAMSEYER, WSBA #57012
401 Union Street, Suite 3400 | Seattle, WA 98101
Phone: (206) 622-8000 | Fax: (206) 682-2305
Email: roe@sgb-law.com; robinson@sgb-law.com; ramseyer@sgb-law.com

LEVI MERRITHEW HORST PC

*s/ Jesse A. Merrithew*
JESSE A. MERRITHEW, WSBA #50178
610 SW Alder Street, Suite 415
Portland, OR 97205-3605
Phone: (971) 229-1241;
Email: jesse@lmhlegal.com

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 26
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

MACDONALD HOAGUE & BAYLESS

*s/ Braden Pence*
BRADEN PENCE, WSBA #43495
705 2nd Avenue, Suite 1500
Seattle, WA 98104-1745
Phone: (206) 622-1604
Email: bradenp@mhb.com

***Counsel for Estate of Michael F. Reinoehl***

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA 98101
Phone (206) 622-8000 ● Fax (206) 682-2305

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**For Defendants Lakewood and Michael Merrill**
John E. Justice
Matthew Turner Sonneby
Lyman, Daniel, Kamerrer & Bogdanovich, P.S.
2674 R.W. Johnson Road
Tumwater, WA 98512
jjustice@lldkb.com
msonneby@lldkb.com

**For Defendant State of Washington**
Allison Croft
Kaylynn What
Simmons Sweeney Freimund Smith Tardif, PLLC
711 Capitol Way South, Suite 602
Olympia, WA 98501
allison@ssslawgroup.com
kaylynn@ssslawgroup.com

**For Defendant Pierce County**
Kerri Ann Jorgensen
Deputy Prosecuting Attorney / Civil
930 Tacoma Avenue South, Suite 946
Tacoma, WA 98402-2102
kerri.jorgensen@piercecountywa.gov

**For Defendant United States of America, Jacob Whitehurst, James Oleole, and Craig Gotcha**
Chibogu Nneka Nzekwu
Andrea J. Friedman
Civil Division, Torts Branch
United States Department of Justice
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044
chibogu.n.nzekwu@usdoj.gov
andrea.j.friedman@usdoj.gov

DATED:      December 4, 2023, at Seattle, Washington.

*s/ Virginia Mendoza*
Virginia Mendoza, Legal Assistant

PLAINTIFF'S RESPONSE IN OPPOSITION TO
INDIVIDUAL FEDERAL DEFENDANTS'
MOTION TO DISMISS – 28
(Case No. 3:23-cv-05618-DGE)

SCHROETER GOLDMARK & BENDER
401 Union Street ● Suite 3400 ● Seattle, WA  98101
Phone (206) 622-8000 ● Fax (206) 682-2305