UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CINDY VAN LOO, | CASE NO. 3:23-cv-05618-DGE |
| Plaintiff, | ORDER DENYING RULE 35 EXAM |
| v. | |
| UNITED STATES OF AMERICA et al., | |
| Defendant. | |

**I      INTRODUCTION**

Before the Court is a discovery dispute regarding a psychological exam under Federal Rule of Civil Procedure 35. The United States seeks a psychological exam of Deaven Reinoehl, the son of decedent Michael Reinoehl, because Plaintiff claims emotional distress damages.[1] Following this Court's discovery dispute procedures, the parties submitted a Joint Discovery Dispute Statement outlining their respective positions. (Dkt. No. 101.) The Court then held a

---

[1] Respectfully, the Court refers to Deaven and Michael Reinoehl by their first names so as to avoid confusion.

1  discovery hearing (*see* Dkt. No. 103), and asked the parties to supplement their positions with

2  memoranda of law, which they did. (Dkt. Nos. 105, 107). Having considered the parties'

3  statements, their presentations at the discovery hearing, and their memoranda and supporting

4  declarations, this matter is now ripe for the Court's resolution. For the reasons that follow, the

5  Court DENIES the request for a Rule 35 exam.

6                              **II       BACKGROUND**

7         This case arises from the shooting death of Michael Reinoehl by members of a United

8  States Marshall Service ("USMS") Violent Offender Taskforce ("VOTF"). (*See* Dkt. 89.)

9  Michael shot and killed a right-wing protestor in Portland, Oregon, and claimed he did so as an

10 act of self-defense. (*Id.* at 11.) Plaintiff claims the VOTF had no real plan to apprehend

11 Michael, and instead their vague plan to "take" him resulted in officers immediately killing him

12 upon arrival to his location. (*See id.* at 13–15, 24–25.)

13        Plaintiff is Michael's estate, and defendants are the United States, the State of

14 Washington, Pierce County, Municipality of Lakewood, and individual officers. (*Id.* at 1.)

15 Plaintiff asserts claims for Fourth Amendment violations (via § 1983 or *Bivens*), and state law

16 negligence and battery (via the Federal Tort Claims Act). (*See id.* at 29–33.) Previously, this

17 Court denied Defendants' Motion to Dismiss on all counts except state law battery against

18 Washington—reasoning that more factual development is needed to determine if officers were

19 acting under color of state or federal law. (*See* Dkt. 77.)

20        In the operative Second Amended Complaint ("SAC"), Plaintiff alleges that as a result of

21 Michael's death, his two children, Deaven and L.L. (a minor), "suffered permanent and

22 irreparable emotional injury resulting from loss of consortium with their father." (Dkt. No. 89 at

23 28.) Plaintiff does not however plead a claim for intentional or negligent infliction of emotional

24

ORDER DENYING RULE 35 EXAM - 2

distress. (*See generally id.*) Plaintiff stipulated to a Rule 35 exam of L.L. "out of an abundance of caution to reserve the right to call a treatment provider," but opposes an exam for Deaven. (Dkt. 101 at 2.) The United States argues Plaintiff has put Deaven's mental condition "in controversy" and that Deaven suffers more than "garden variety" emotional distress, so there is good cause for a Rule 35 exam. (*Id.* at 1–2.) Plaintiff disagrees, stating that Deaven's mental condition is not "in controversy" because he does not allege suffering any more unusual or severe emotional distress than what would ordinarily be expected of a person who loses a parent, and lay testimony is sufficient to describe that harm. (*See id.* at 2–3.) The parties attempted to resolve this dispute by stipulation but were unable to reach an agreement. Plaintiff was willing to stipulate to not call a treatment provider to testify on Deaven's behalf nor to admit counseling records for him, but objected to a stipulation from the United States that precluded lay opinions of Deaven's "physical manifestations" of emotional distress as "vague and overbroad." (*Id.* at 1, 3.)

### III    DISCUSSION

a. <u>Legal Standard</u>

Federal Rule of Civil Procedure 35(a) provides that when a party's mental or physical condition is "in controversy," the court may order an exam by a licensed professional, but only on "motion for good cause." Accordingly, Rule 35 requires the movant to establish both of two distinct elements, the "in controversy" and "good cause" requirements. *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964). Still, some courts have found that "the two requirements of Rule 35 are merged" because once "the plaintiff has placed his mental state in controversy" that "in turn constitutes good cause for ordering a psychiatric examination under *Schlangenhauf*." *Ragge*

v. *MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D. Cal. 1995) (quoting *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D. Conn. 1994)) (internal quotation marks omitted). Good cause has been interpreted to mean "a showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case" and that "the defendant has no other method to discover relevant information; there is simply no less intrusive means." *Id.* (internal quotation marks omitted).

The leading case interpreting Federal Rule Civil Procedure 35(a) is *Schlagenhauf*. That case concerned an auto accident and a motion to subject the driver to a mental and physical exam. 379 U.S. at 107. The Court observed that the phrase "good cause" in the rule must mean more than "merely showing that the desired materials are relevant" and "there must be greater showing of need under Rules 34 and 35 than under the other discovery rules." *Id.* at 118. The Court called for "discriminating application" of the rule by trial judges. *Id.* In some cases, the pleadings will be sufficient to determine that an exam is necessary, such as in a negligence action where the plaintiff pleads a mental or physical injury and the existence of that injury is at issue. *Id.* at 119. But the court should not order an exam whenever a "general charge of negligence is lodged" or it would become commonplace. *Id.* at 121–22.

While there is little binding precedent from the Ninth Circuit applying Rule 35, district courts considering Rule 35 motions frequently rely on *Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D. Cal.1995). The *Turner* court sought to determine if invocation of "humiliation, mental anguish, and emotional distress" was sufficient to warrant a Rule 35 mental exam. *Id.* at 92. The court conducted an extensive survey of decisions applying Rule 35 and concluded that while courts had gone both ways:

> [t]he weight of the authority on this issue establishes that in order for a party seeking to compel a psychiatric examination under Rule 35 to establish that the

ORDER DENYING RULE 35 EXAM - 4

other party's mental condition is 'in controversy' within the meaning of the Rule, the moving party must show more than that the party in question has claimed emotional distress.

*Id.* at 97. Instead, the court identified five factors that should guide the decision of whether to order a mental exam:

> 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

*Id.* at 95. Though *Turner* is not binding, it was cited favorably by the Ninth Circuit in *Wilson v. Dalton,* 24 Fed. Appx. 777 at *2, n.12 (9th Cir. 2001), and has been widely cited by other district courts. *See Diunugala v. Dep't of Conservation*, No. CV 16-03530-DSF (JEMx), 2018 WL 6137595, at *1 (C.D. Cal. Jan 31, 2018).

    b. <u>Analysis</u>

Analyzed through the lens of the *Turner* factors, the Court finds that the United States has not met its burden to demonstrate either that Deaven has placed his mental condition "in controversy" or that "good cause" exists for an exam. First, the United States points to the language in the complaint that Deaven "suffered *permanent and irreparable emotional injury* resulting from loss of consortium with their father" and that "[t]he children were also emotionally harmed by the foreseeable and *highly publicized, sensational, and political nature* of their father's *violent* death." (*See* Dkt. No. 105 at 2) (emphasis in original). But the statement in the complaint that Deaven suffers "permanent and irreparable" injury is not offered as a medical fact. Rather, it stands for the common proposition that a child whose parent is shot and killed will suffer in some manner from that loss permanently. As to the "highly publicized, sensational,

ORDER DENYING RULE 35 EXAM - 5

and political" nature of Michael's death, none of those adjectives are evidence that Deaven suffers from a mental condition, rather they describe the circumstances of Michael's death.

Next, the United States points to several of Plaintiff's discovery responses. In an interrogatory about any "physical, emotional, and/or mental injury" suffered "as a result of the Defendant's actions or inaction on September 3, 2020" Plaintiff stated that Deaven "suffers emotional distress from the loss of the love and companionship of his father *and depression*." (Dkt. Nos. 105 at 2; 106-1 at 2–3) (emphasis in original). As the United States notes, depression is a diagnosable condition that can be treated with medication and counseling. (Dkt. No. 105 at 3.) As such, it falls within *Turner* factor two. But the record lacks sufficient evidence that Deaven's depression is "in controversy" beyond the "garden variety" ordinarily expected of a person who loses a parent in an act of violence. Deaven stated in his deposition that he sought counseling *in the past* (apparently while his father was alive) and is "look[ing] at [his] options" for future counseling—though he does not state that the counseling resulted from the death of his father or that he is currently receiving counseling.[2] (*See* Dkt. No. 106-2 at 45.) The United

---

[2] The exchange in the deposition transcript reads:

> Q: Deaven, have you ever been treated at Cascadia health? A: Yeah. Q: What was that for? A: For counseling. Q: And when you say counseling what do you mean? Do you mean therapeutic help or something else? A: Yeah. Q: When you say yeah, yeah what? A: Therapeutic. Q: Therapeutic help? A: Yes. . . . Q: And how long were you getting counseling at Cascadia? A: I don't remember. Q: Do you remember what ages -- what age you were? A: No. Q: Do you remember if you were living with your dad or with your mom when you were getting this counseling at Cascadia? A: No, I don't remember. Q: Do you have a plan to seek any therapy now? A: Yeah. Q: Okay. Have you taken any actions on that -- on those plans? A: Kind of. Q: When you say kind of what do you mean? A: There's not really a counselor that I can really talk to, but I've tried to look at my options. Q: Okay. And when you say you have tried to look at your options can you tell me what you mean by that? A: Well, they have asked if I wanted to talk to a counselor, but that -- it wasn't like a real counseling session. Q: Did you go and talk to that counselor? A: Yeah. Q: Okay. And when you say it wasn't like a real counseling

States invokes other "difficult events in [Deaven's] life" including a custody battle, being unhoused, other shootings, drug use by his parents, and his arrest history—but does not specifically connect those events to the shooting at issue or a depression diagnosis.  (*See* Dkt. Nos. 105 at 4, 106 at 3.)  Deaven stated that in the past he "just wanted to blame it on myself" (referring to his dad's death), but denied still feeling that way.  (Dkt. No. 106-2 at 37–38.)  Even if Deaven is suffering from depression, Plaintiff has disclaimed an interest in calling at trial a treatment provider or expert or admitting medical records to provide evidence of a mental condition.  (Dkt. No. 101 at 3.)  Similarly, the United States raises an exchange from Deaven's deposition in which he acknowledged that he "block[s] out scary things" such as "my dad getting killed."  (Dkt. Nos. 105 at 3, 106-2 at 33.)  Even if the Court were to interpret this statement as indicative of memory loss or another diagnosable condition (which seems unlikely), the United States does not allege Plaintiff seeks damages resulting from that memory loss.

By contrast, Plaintiff has cited several cases that treated anxiety or depression as "garden variety" emotional distress, arising from factual circumstances similar to those here.  In *Dawson v. South Correctional Entity*, 2021 WL 2012310, at *2 (W.D. Wash. May 20, 2021), a case about a death of a parent in custody, a court in this district denied defendants' motion to compel discovery disclosure of psychiatric records, which also turns on the "garden variety" emotional distress standard.  The court held that "non-medical emotional harm damages related to stress, loss of enjoyment of life, humiliation, embarrassment, fear, anxiety, and anguish/grief as a result of Defendant's conduct" are garden variety emotional harms that can be assessed by lay testimony.  *Id.* at *3.  Defendant's evidence that the children "struggled in school or seemed

---

session what do you mean? A: They just came and asked a couple questions and that was it.
(Dkt. No. 106-2 at 43–45.)

ORDER DENYING RULE 35 EXAM - 7

depressed" was insufficient, and Plaintiffs had committed to not use medical testimony nor seek medical expenses as damages. *Id.*

In *Ruvane v. Elizabeth F, Inc.*, No. 3:15-CV-00079-JWS-KFM, 2016 WL 6514181, at *2 (D. Alaska Aug. 25, 2016), the court held that the "the ordinary grief, anxiety, anger, and frustration that any person feels when something bad occurs" is a "garden variety" emotional distress not meriting a Rule 35 exam. In that case, plaintiff "expressly eschew[ed] any desire for or effort to obtain relief for specific psychological damages" and instead sought damages for a physical injury to his arm, so his mental condition was not "in controversy." *Id.* at *5. In *Sims v. Lakeside Sch.*, No. C06-1412RSM, 2007 WL 5417731, at *1 (W.D. Wash. Mar. 15, 2007), another ruling on psychotherapist privilege in this district, the court denied a motion to compel because plaintiff sought only "'garden variety' emotional distress symptoms, including *depression*, anger, irritability, sleep loss, discouragement, withdrawal, relived experience and low self esteem." (emphasis added). Again, plaintiff was not seeking to use an expert to prove emotional distress damages nor making a claim for intentional or negligent infliction of emotional distress. *Id.* Finally, in *Est. of Alvarado by Alvarado v. Tackett*, No. 13CV1202-W (JMA), 2015 WL 13375766, at *3 (S.D. Cal. Feb. 4, 2015), the court denied a Rule 35 motion by the United States in a case involving the shooting death of a parent, because plaintiff had not claimed anything different than the "anguish and grief expected to result" from death of a parent.

The cases that the United States cites for support (*See* Dkt. Nos. 101, 105) involve mental or physical conditions significantly more severe than those at issue here. In *Alexander v. City of Bellingham*, C07-0868-MAT, 2008 WL 2077970 at *2 (W.D. Wash. May 15, 2008) the court ordered a mental exam for a plaintiff who attempted suicide four times after the incident at issue

ORDER DENYING RULE 35 EXAM - 8

and suffered severe PTSD.  The plaintiff in that case did not respond to the motion, so it was deemed merited, but did plead claims for intentional and negligent infliction of emotional distress.  *Id.* at *1–2.  Likewise, in *Robertson v. Catholic Community Services of Western Washington*, No. C19-1618 RSM 2020 WL 1819842 at *1 (W.D. Wash. April 10, 2020) (internal quotation marks omitted), plaintiff claimed "extreme stress" from workplace discrimination that caused "a downward spiral with depression, anxiety, and alcohol abuse" necessitating professional treatment and missed work.  In *Brill v. Napolitano*, No. cv-09-0421-PSG (RCx), 2010 WL 11509081 at *2 (C.D. Cal. Apr. 26, 2010), the court ordered a mental exam based on several conditions plaintiff asserted in her interrogatory, including: teeth grinding, insomnia, loss of appetite, fatigue, depression/anxiety.  The plaintiff claimed damages based on "severe mental and emotional distress," which was enough for the court to order a Rule 35 mental exam regardless of whether it accepted the "majority" or "minority" approach.  *Id.* at *1–2.

        Further, in *Diunugala*, on which the United States relies heavily (*see* Dkt. No. 105 at 4), the court relied on deposition testimony in which plaintiff stated that the "physical manifestations" of his emotional distress included diabetes, blurry vision, chest pains and high blood pressure.  2018 WL 6137595 at *2.  Even still, the *Diunugala* court did not order a mental exam; it allowed plaintiff to avoid the exam on the condition that it amend its complaint to remove reference to "'great' anguish" and "anxiety," limit his testimony to "garden variety" emotional distress and not any "physical manifestations" or specific disorders arising from the distress, and not offer documentary evidence of severe emotional distress or specific conditions.  *Id.* at *3.  At the court's direction, the parties agreed to a stipulation to be read to the jury outlining these conditions.  *Id.*; (*See* Dkt. No. 106-3 at 2.)

ORDER DENYING RULE 35 EXAM - 9

In sum, the Court finds that a Rule 35 mental examination is not warranted. Of the five *Turner* factors, only the second has arguably been invoked—by Plaintiff's interrogatory statement as to Deaven's "depression." But in reviewing the caselaw on this subject, the Court finds that reference to "depression," without more, does not establish more than "garden variety" emotional distress, and Plaintiff has not alleged that Deaven suffers an "unusually severe" condition within the meaning of *Turner* factor three. As previously noted, Plaintiff does not make a claim for intentional or negligent emotional distress, and does not plan to call an expert to testify about an emotional condition. Accordingly, the balance of the *Turner* factors weighs against ordering a Rule 35 exam. The United States has not shown that Deaven's mental condition is "in controversy," and good cause for an exam does not exist because on this record the Court does not believe that the exam is necessary to Defendant's case.

## IV    CONCLUSION

For the foregoing reasons, the United States' request for a Rule 35 mental examination is DENIED.

DATED this 21st day of October 2024.

David G. Estudillo
United States District Judge